David A. Koenigsberg
Menz Bonner & Komar LLP
444 Madison Avenue, 39th Floor
New York, New York   10022
Tel.:  (212) 223-2100
dkoenigsberg@mbklawyers.com
*Attorneys for Relator*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* GURUMURTHY KALYANARAM and STATE OF NEW YORK, *ex rel.* GURUMURTHY KALYANARAM,<br><br>Plaintiffs,<br><br>-- v --<br><br>NEW YORK INSTITUTE OF TECHNOLOGY, ELLIS COLLEGE OF NEW YORK INSTITUTE OF TECHNOLOGY, CARDEAN LEARNING GROUP LLC, UNEXT, INC. and UNEXT LLC,<br><br>Defendants, | **FILED**<br>**UNDER SEAL**<br>**Pursuant to**<br>**31 U.S.C. § 3730(b)**<br>**and N.Y. State**<br>**Finance Law**<br>**§ 190(2)(b)**<br><br>07 Civ. 9307 (JFK) |

-----------------------------------------------------------------------X

## RELATOR-PLAINTIFF'S FIRST AMENDED COMPLAINT

Relator-Plaintiff Gurumurthy Kalyanaram ("Relator"), by and through his attorneys, Menz Bonner & Komar LLP, makes this first amended complaint against defendants New York Institute of Technology ("NYIT"), Ellis College of New York Institute of Technology ("Ellis"), Cardean Learning Group LLC ("Cardean"), UNext, Inc. and UNext LLC, pursuant to the *Qui Tam* provisions of the Federal False Claims Act, 31 U.S.C § 3730(b) and the New York False Claims Act, N.Y. State Finance Law § 190(2)(b).

## I. **NATURE OF ACTION**

1.        This action arises from the Defendants' efforts to obtain federal and state higher education grants and subsidized loans through false and fraudulent claims and statements made to the United States Department of Education ("US DOE"), the New York State Department of Education, the New York State Board of Regents and the New York State Higher Education Services Corporation ("HESC") (collectively the "New York State Agencies") to obtain federal and state funded student financial assistance in the form of grants and subsidized loans to students attending NYIT and Ellis. Defendants used false certifications and records to obtain government funded student financial assistance. Defendants' false certifications and statements concern, among other things:

(a)        That courses offered and degrees awarded by Ellis College do not comply with the academic standards and requirements that apply to New York Institute of Technology's ("NYIT") courses and degrees, contrary to express representations defendants made when they created Ellis College and obtained approval from New York State and the federally approved accrediting agency. The defendants' actions, in addition to improperly receiving government funds, also caused harm to the students they are supposedly serving by not providing the Ellis students with the complete education they thought they were getting and devaluing the degrees earned by the NYIT students. In other words, the defendants are victimizing the very persons they are supposed to be educating.

(b)        That NYIT and Ellis College did not comply with the rules and regulations applicable to Distance Learning for post-secondary educational programs.

- 2 -

(c)       That NYIT and Ellis College paid illegal cash incentives to recruiters to enroll students in violation of applicable laws, rules and regulations.

## II.  JURISDICTION

2.       This Court has subject matter jurisdiction over the claims alleged in this Complaint under 28 U.S.C. § 1331 (Federal question), § 1345 (United States as plaintiff) and 31 U.S.C. § 3732(a) (False Claims Act).  This Court has supplemental jurisdiction over the claims asserted under state law pursuant to 28 U.S.C. § 1367(a).

3.       This Court has personal jurisdiction over the Defendants named in the Complaint pursuant to 31 U.S.C. § 3732(a), because at least one of the Defendants can be found, resides, and transacts business in the Southern District of New York and because an act proscribed by 31 U.S.C. § 3729 occurred within this District.  Section 3732(a) further provides for nationwide service of process.

4.       This action is not jurisdictionally precluded by the public disclosure bar of the Federal False Claims Act, 31 U.S.C. § 3730(e)(4) and the New York False Claims Act, N.Y. State Finance Law § 190(9)(b).  Upon information and belief, there has been no "public disclosure" of the matters alleged herein and this action is not "based upon" any such disclosure.  Notwithstanding the foregoing, through his position as a member of the faculty of NYIT's School of Management and his interactions with various employees of the Defendants and other persons, Relator has "direct and independent knowledge" of the instant allegations.  Additionally, Relator has "voluntarily provided," and offered to provide, this information to the United States and New York State before the filing of this complaint.  Therefore, to the extent any of these allegations is deemed to have been based upon a public disclosure, Relator is an "original source" of

this information within the meaning of the Federal False Claims Act and the New York
False Claims Act, and is expressly excluded from their public disclosure bars.

### III.  VENUE

5.      Venue is proper in the Southern District of New York, under 28
U.S.C. §§ 1391(b) and (c), and 31 U.S.C. § 3732(a), because a substantial part of the
events or omissions giving rise to the violations of 31 U.S.C. § 3729 alleged in the
Amended Complaint occurred in this District, and because at least one of the Defendants
can be found and transacts business within this District.

### IV.  PARTIES

6.      Relator is a resident of New York County, NY.  He has a Ph.D. in
Business Administration from the Massachusetts Institute of Technology and at all times
relevant he was the Director of the Masters of Business Administration Program at
NYIT's School of Management resident at NYIT's Manhattan, NY location.

7.      New York Institute of Technology is a private non-profit
comprehensive senior college with over 14,000 students in three colleges and five
academic schools.  NYIT has two campuses located on Long Island and one in
Manhattan.  NYIT has a Manhattan campus located at 1855 Broadway, New York, NY
60015; tel. (212) 261-1500, and a campus located at  Northern Boulevard, P.O. Box
8000, Old Westbury, NY  11568-8000; tel. (516) 686-1000.  NYIT is chartered by the
Board of Regents of the State of New York and its courses must be registered with the
New York State Department of Education, the state agency responsible for the approval
of all degree programs offered by NYIT. NYIT is accredited by Middle States
Association of Schools and Colleges ("Middle States").   NYIT is also a participant in the

federal and state funded student loan and grant programs administered by US DOE and HESC.

8.      Ellis College of NYIT ("Ellis") is a private, for-profit enterprise that exclusively offers on-line courses.  Ellis was founded in 2002-2003 as a for-profit joint venture between Cardean Learning Group LLC ("Cardean") and NYIT.  Ellis is located at 111 North Canal Street, Suite 455, Chicago, Illinois, 60606-7204; tel. (800) 405-5844.

9.      Cardean is a privately held company headquartered at 225 High Ridge Road, Stamford, CT  06095; tel.:  (203) 973-2200, that is funded by venture capitalists, including Michael Milken.  Cardean founded Cardean University in 2000 to provide graduate business and management programs, including an online MBA program.  Cardean's headquarters are located at 111 North Canal Street, Suite 455, Chicago, Illinois  60606-7204; tel. (312) 669-5000.   Cardean is a subsidiary of UNext, Inc. and UNext LLC, located at 500 Lake Cook Drive, Deerfield, Illinois  60015, tel.: (877) 405-4500.

## V.  DEFENDANTS' FRAUDLENT SCHEMES

10.      In 2003, Cardean and NYIT formed an alliance to establish Ellis College of NYIT, to provide online courses for working adults.  The alliance ended in 2008.  Under this arrangement, students who enrolled and completed Ellis's courses of study were awarded degrees issued by NYIT, but the Ellis students could only take courses offered by Ellis. The Ellis students were not permitted to take any NYIT courses. Upon information and belief, Ellis paid NYIT at least 30% of its revenues in exchange for NYIT's agreement to confer degrees on the Ellis students.  As a result of this

arrangement, Cardean's students were eligible, through NYIT, to obtain grants and loans

that are funded or subsidized by the United States and the New York State governments.

Ellis students were eligible for, among other programs, Federal Pell Grants and Stafford

Loans and the New York State Tuition Assistance Program.

           11.    When NYIT and Cardean arranged for the creation of Ellis College

in 2003, NYIT made the following express representations to Middle States and the New

York State Department of Education with regard to "Control of Core Academic

Functions" at Ellis:

> **[A]s promised by NYIT to Middle States and NYSED,** all degree
> requirements, courses, syllabi, course sequences and prerequisites, core
> curriculum and major and minor requirements will be those of NYIT's
> registered degree programs.  The involvement of faculty, in core
> academic functions, including, but not limited to, practices, procedures,
> assessments of outcomes including the approval, design, implementation
> and delivery of UNext/Ellis programs and courses, will remain the same
> as existed prior to the academic year of 2003-2004.  As the degree-
> granting institution, NYIT will follow its current norms and practices,
> and it has the right, in its sole and absolute discretion, to admit students,
> and award grades and degrees according to its standard requirements.  In
> addition, all advertising, recruitment and advisements activities relating
> to these programs will be controlled and approved by NYIT.  (Emphasis
> Added.)

*See* Collective Bargaining Agreement between NYIT and American Association of

University Professors at NYIT, Appendix D, ¶ 13 to Amendment of November 25, 2003;

*see also* Letter from NYIT's President, Edward Guiliano, to Faculty of the NYIT

Graduate School of Management, Re:  Academic Governance of Ellis College (Sept. 19,

2003).  According to NYIT's President Guiliano, this meant that NYIT was responsible:

- Approval of programs, curricula, course materials, and credit through NYIT's

  established procedures;

- Establish standards for the qualification, appointment and evaluation of faculty and other institutional staff;

- Establish standards for admission and admit students who meet the standards;

- Establish applicable standards and procedures for evaluating student performance;

- Oversee the integrity of evaluations of student performance;

- Establish the requirements for granting of academic degrees and evaluating whether students meet those criteria;

- Establish procedures for awarding of academic degrees and other credentials to students;

- Exercise responsibility for ongoing curriculum planning including the process and assurance that the coursework is consistent with the overall program design and curriculum intent.

*Id.*

        12.    Middle States is one of six regional associations that accredit public and private schools, colleges and universities in the United States.  Middle States covers Delaware, the District of Columbia, Maryland, New Jersey, New York, Pennsylvania, Puerto Rico and the U.S. Virgin Islands.  The accreditation process aids institutions in developing and sustaining effective educational programs and assures US DOE, the educational community, the general public and other organizations that an accredited institution has met high standards of quality and effectiveness.  The US DOE and New York State use Middle States as the front-line entity having legal, regulatory and standards enforcement responsibilities for universities on accreditation issues in the covered states and in New York in particular.  Indeed, US DOE has identified Middle

States as a reliable authority regarding the quality of education offered by the institutions it certifies to establish eligibility to participate in the federally sponsored higher education financial assistance programs.  *See* 20 U.S.C. § 1099b; 34 C.F.R. § 602.1; 34 C.F.R. § 602.10; 34 C.F.R. § 602.11; 34 C.F.R. § 602.16; 34 C.F.R. § 602.19; 34 C.F.R. § 602.20; 34 C.F.R. § 668.8; 34 C.F.R. § 668.8.

13.     Contrary to the express representations to US DOE and the New York State Agencies set forth above, NYIT exercised few if any of these core academic functions with the result that the Ellis students received federal and state subsidized student financial assistance to take courses that did not comply with the academic standards requisite for a degree from NYIT. Defendants failed in their promises to have NYIT provide academic oversight as to the contents of the courses offered by Ellis, the faculty Ellis used to teach its on-line courses, the operation of the courses, qualifications and admissions of Ellis students, the students' attendance at and participation in the course work and the nature of the degrees being awarded to the Ellis students.

14.     As a result of its agreement with Ellis, NYIT licensed out its degree granting authority to permit Ellis to partake of government funded student financial assistance programs, but Ellis students were saddled with student loans and debts to pay for an education that had not been subjected to the academic and programmatic review that was promised to the relevant governmental authorities when Ellis was created.  Contrary to defendants' express representations to the governing educational authorities, the Ellis program operated outside of the NYIT academic review and approval process thus providing its students with an education that did not comply with the requisites demanded of NYIT's own students and lacked academic integrity.

15      According to NYIT's Faculty Handbook, in order for a new course to be offered at NYIT, a faculty member must review the proposed course with the department chairman and the department's curriculum committee.  After approval at that level, the proposal must be presented to the school's curriculum committee and then to the NYIT's academic senate curriculum committee, the academic senate and the institution's president.

16.     The first courses Ellis offered were in the area of graduate business management.  Many of these courses had previously been offered by Cardean University.  These courses were reviewed and approved by NYIT's faculty in a special and expedited review process never used before to vet and approve curriculum additions at NYIT.  After the Cardean courses were reviewed and evaluated by NYIT's School of Management faculty, it was determined that the Ellis MBA program should be designated an Executive MBA program because it did not entail the same requirements associated with NYIT's MBA program.  New York State had previously authorized NYIT to offer a General MBA program with different areas of concentration, or an Executive MBA degree.  Each program has different program requirements and admission standards.   To obtain the General MBA degree from NYIT, a student must complete the equivalent of 42 credit hours of coursework including 36 hours of coursework and either passing a faculty administered Comprehensive Oral Examination or taking and passing two additional elective courses, each worth three credits for a total of 42 credit hours.  An Ellis MBA student, on the other hand, was only required to complete 36 hours of courses with no further academic requirements.  The Ellis students were not required to pass a

Comprehensive Oral Examination or take two additional courses and the Ellis catalogue identifies the program as an Executive MBA program.

17.     In September 2005, Relator discovered that the Ellis Executive MBA students were being awarded regular NYIT MBA degrees. When Relator raised this issue with the NYIT administration, NYIT's administrators claimed that they did not realize that the Ellis MBA students were being awarded the incorrect degree and purported to correct the error. But, at late as May 2007, the Ellis MBA students were awarded regular MBA degrees.

18.     The business management courses offered by Ellis were reviewed by NYIT School of Management faculty from 2003 through January 2005 in a special and expedited process undertaken following the receipt of specific written assurances from NYIT's President regarding the title of the program (Executive MBA), the curriculum and requirements of the program and NYIT's academic governance and supervision. In 2006, however, Ellis publicly announced that it had restructured its MBA program for the Fall 2006 semester, but none of these changes were reviewed by or approved by any members of NYIT's School of Management nor were they presented to NYIT's Faculty Senate Curriculum Committee. Relator was in a position to know this because he was the School of Management's representative on NYIT's Senate Curriculum Committee. Following the launch of the Ellis College MBA program, Ellis began to offer undergraduate and graduate courses in other academic disciplines but those courses were not subjected to the NYIT procedures for review and approval of new courses and curricula, contrary to defendants' express representations to the federal and state educational authorities.

19.     NYIT also represented to government educational authorities that it would have responsibility for assuring the competence and qualifications of the faculty teaching the Ellis courses.  To Relator's knowledge, there was no review by the NYIT faculty or administration of the competence and qualifications of the Ellis faculty. Notwithstanding the requirements of the New York State Board of Regents regarding the minimum qualifications for graduate and undergraduate faculty, many of the Ellis College graduate school faculty members did not have doctoral or terminal degrees in the field in which they were teaching.  Further, Relator understands that most of the Ellis College courses were taught by adjunct faculty without academic credentials such as a masters or doctorate degree.

20.     In addition, the admissions requirements for Ellis students were not uniformly applied and did not comply with the admissions requirements that are applied for admission to NYIT. For example, Ellis's stated policy was that the requirement that applicants take the GMAT may be waived selectively after individualized review.  In practice, however, the GMAT requirement was routinely waived and only rarely, if at all, required of Ellis applicants.

21.     NYIT made representations to Middle States that Ellis would be a branch campus.  NYIT, however, did not fulfill the requirements of the New York State Education Department for the establishment and operation of a branch campus.

22.     Ellis, from its inception, offered 100% on-line education without any classes conducted in person.  Although Ellis always provided a 100% distance learning education program, Ellis had not been approved for Distance Learning

23.     In addition to the foregoing, Ellis and NYIT made incentive payments to

recruit students to attend Ellis and NYIT, which payments violate the express terms of

NYIT's Program Participation Agreement and the Higher Education Act.  This means

that Ellis and NYIT have engaged recruiters for the purpose of enrolling students in their

programs whose compensation was based upon the number of persons that they helped to

enroll in their programs or who obtained financial assistance.  As set forth below, such

financial incentive based recruitment/enrollment compensation is illegal and expressly

forbidden under NYIT's agreements with DOE and HESC and by statute and regulation.

## VI.  LEGAL AND REGULATORY STANDARDS

### A.    Defendants Violated the Federal Program Participation Agreement

24.    In order for students of a post-secondary educational institution to

be eligible for federal financial aid, all such institutions must enter into Program

Participation Agreements with US DOE.  The Program Participation Agreement is a

contract between the institution and US DOE.  The agreement is the first step in making

the institution eligible to participate in the federal student financial assistance programs.

When it enters into the Program Participation Agreement, the institution certifies, as

required by federal statute that it is subject to and will comply with all statutes and

regulations for eligibility for the federal Title IV, Higher Education Act programs.  The

institution makes the following representations:

> ¶ 1.    The Institution understands and agrees that it is subject to
> and will comply with the program statutes and implementing regulations for
> institutional eligibility as set forth in 34 CFR Part 600 and for each Title IV HEA
> program in which it participates, as well as the general provisions set forth in Part
> F and Part G of Title IV of the HEA, and the Student Assistance General
> Provisions regulations set forth in 34 CFR Part 668. **The recitation of any
> portion of the statute or regulations in this Agreement does not limit the
> Institution's obligations to comply with other applicable statutes and
> regulations.**
>
> * * * *

¶ 9.   It will comply with the requirements of Subpart D of 34 CFR Part §§ 668 concerning institutional and financial assistance for students and prospective students.

* * * *

¶ 22.   It will not provide, nor contract with any entity that provides, any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the awarding of student financial assistance . . . .

* * * *

¶ 23.   It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary, State [authorizing bodies], and nationally recognized accrediting agencies.

(Emphasis in original.)

25.   The Higher Education Act, 20 U.S.C. § 1094 ("HEA"), provides in relevant part:

In order to be an eligible institution for the purposes of any program authorized under this subchapter . . . an institution . . . shall . . . enter into a program participation agreement with the Secretary. The agreement shall condition the initial and continuing eligibility of an institution to participate in a program upon compliance with the following requirements:

* * * *

(20)   The institution will not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance . . .

20 U.S.C. § 1094(a)(20).

26.   The regulations under the Higher Education Act, 34 C.F.R. § 668.14(b)(22)(i), provides as follows:

By entering into a program participation agreement, an institution agrees that . . . [i]t will not provide any commission, bonus, or other incentive payment based directly or indirectly upon success in 34 C.F.R. § 602.16; securing enrollments or financial aid to any person or entity engaged in any student recruiting or admission activities or in making decisions regarding the awarding of Title IV, HEA Program funds . . .

- 13 -

27.     In order to be eligible to participate in student financial assistance programs administered by New York State, the institution must also enter into an "awards participation agreement" with HESC.  8 N.Y.C.R.R. § 2205.3(e)(1).  The New York State participation agreement provides that the institution will comply with all laws and regulations governing the awards program.  *Id.*

28.     Before New York State authorizes a college or university to issue a degree, the institution must comply with the applicable New York State Regulations that govern the Requirements for Earned Degrees.  The applicable regulations provide:

> General requirements:  (1) No earned degree shall be conferred in this State on any person who has not completed the program of study requisite to such degree, which institution shall be authorized to confer the same. No earned undergraduate or graduate degree shall be conferred unless the applicant has completed a program registered by the department.

8 N.Y.C.R.R. § 3.47.

29.     The regulations of the New York State Board of Regents require the registration of undergraduate and graduate curricula and set forth the standards that must be met for registration.  With regard to faculty, the regulations require that with regard to a graduate degree program, "All faculty members who teach within a curriculum leading to a graduate degree shall possess earned doctorates or other terminal degrees in the field in which they are teaching . . . ."  8 N.Y.C.R.R. § 52.2(b)(5).  In addition, the regulations require the institution to create and maintain faculty curriculum committees to ensure that academic standards and goals are met.  8 N.Y.C.R.R. § 52.2(b)(3).  These rules were violated by Ellis and NYIT because, most of the Ellis College courses were taught by adjunct faculty without academic credentials such as a

masters or doctorate degree and NYIT has provided little or no oversight or review of the Ellis College graduate or undergraduate curriculums.

30.     The regulations of the New York State Board of Regents further impose standards with regard to admissions procedures.  Under these regulations, "The admission of students shall be determined through an orderly process using published criteria which shall be uniformly applied."  8 N.Y.C.R.R. § 52.2(d)(1).  Ellis routinely violated this regulation by waiving the requirement that its MBA applicants take the GMAT examination, a requirement for applicants to NYIT's MBA program.

31.     According to the Middle States' statement of eligibility requirements and standards for accreditation, in order to qualify for and maintain accreditation "[t]he institution's instructional, research, and service programs are devised, developed, monitored, and supported by qualified professionals."  Accreditation Standard No. 10.   The Middle States standards further provide that the institution publishes in its catalog or other appropriate place accurate and current information that "describes . . . academic credentials of faculty."

32.     Defendants violated the Program Participation Agreement because the Ellis curriculum and course requirements did not comply with NYIT's academic standards, procedures, and requirements for awarding degrees and by making illegal recruitment incentive payments to enroll students.

**B.     Defendants Violated the Distance Learning Laws and Regulations**

33.     In order to establish a branch campus, the institution must be authorized to by the Board of Regents to operate a branch campus.  Specifically, New York State regulations provide as follows:

- 15 -

(a)     Branch campuses (1) No independent institution shall establish a branch campus unless the institution is authorized to establish such branch campus by its charter and master plan, as approved by the Regents.  (2) No public university or college thereof shall establish a branch campus unless the university is authorized to establish such branch campus by its master plan as approved by the Regents and the Governor.  (3) No degree-granting proprietary institution shall establish a branch campus unless the institution has the permission of the Regents to establish such branch campus.  (4) The criteria to be used in reviewing the application of an institution to establish a branch campus will include: (i) the conformity of the curricula to be offered at the proposed branch campus with the standards of academic quality required by Part 52 of this Title;....

9 N.Y.C.R.R. § 54.1.

34.     Part 52 of the New York Education Regulations sets forth requirements for the registration of postsecondary curricula and requires that "the curricula offered at each branch campus shall be registered separately from curricula at an institution's principal center."  8 N.Y.C.R.R. § 52.1(3).  The standards for the registration of undergraduate and graduate curricula include requirements for institutional resources, faculty credentials, mentoring and supervision, curricula and courses, admissions criteria and processes, and academic administration and governance. 8 N.Y.C.R.R. § 52.2.

35.     New York State maintains a web site that lists the distance education programs offered by accredited New York institutions that have been approved by the State Education Department.  A search of this database revealed no entries for Ellis College nor any entries for Ellis courses under the three NYIT entries (Old Westbury, Manhattan or Islip).   http://web1.nysed.gov/ocue/distance/database.html (last visited October 11, 2007).

of the truth or falsity of the information, and no proof of specific intent to defraud is required.

(c) For purposes of this section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729.

38.     The Federal False Claims Act, as amended May 20, 2009, provides

in pertinent part, that:

(a) (1) …. any person who –

(A)     knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B)     knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C)     conspires to commit a violation of subparagraph (A),(B), . . . or (G) ; [or]

(G)     knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government;

***

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

- 18 -

(b) For purposes of this section –

(1) the terms "knowing" and "knowingly" (A) mean that a person, with respect to information -- (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud;

(2) the term "claim" – (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contactor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . . .

(31 U.S.C. § 3729, as amended March 23, 2010).

39.     The New York False Claims Act, prior to August 13, 2010,

provided in pertinent part as follows:

1.     "Claim" means any request or demand . . . for money or property which is made to any employee, officer or agent of the state or a local government . . . if the state or a local government provides any portion of the money or property which is requested or demanded . . . .
2.     "False claim" means any claim which is, either in whole or party false or fraudulent.
3.     "Knowing and knowingly" means that with respect to a claim, or information relating to a claim, a person: (a) has actual knowledge or such claim or information; (b) acts in deliberate ignorance of the truth or falsity or such claim or information; or (c) acts in reckless disregard of the truth or falsity or such claim or information.  Proof of specific intent to defraud is not required, provided, however, that acts occurring by mistake or as a result of mere negligence are not covered . . . .

(N.Y. State Finance Law § 188(1), (2) & (3)).

(a) Any person who . . . (1) knowingly presents, or causes to be presented, to an officer or employee or agent of the state or a local government . . . false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a local government; [or] (3) conspires to defraud the state or a local government by getting a false or fraudulent claim allowed or paid;

\*\*\*

shall be liable (i) to the state for a civil penalty of not less than six thousand dollars and not more than twelve thousand dollars, plus three times the amount of damages which the Government sustains because of the act of that person . . . .

(N.Y. State Finance Law § 189(1)(a), (b),(c), (i) & (ii)).

40.     The New York False Claims Act, as amended August 13, 2010,

provides as follows:

1.     "Claim" (a) means any request or demand . . . for money or property that (i) is presented to an officer, employee or agent of the state or a local government . . .

2.     "False claim" means any claim which is, either in whole or part, false or fraudulent.

3.     "Knowing and knowingly" (a) means that a person, with respect to information: (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (b) require no proof of specific intent to defraud, provided, however that acts occurring by mistake or as a result of mere negligence are not covered . . . .

(N.Y. State Finance Law § 188(1), (2) & (3), as amended August 13, 2010).

Section 189 of the New York False Claims Act, as amended August 13,

2010, provides in pertinent part as follows:

> (1) [A]ny person who . . . (a) knowingly presents, or causes to be
> presented a false or fraudulent claim for payment or approval; (b)
> knowingly makes, uses, or causes to be made or used, a false
> record or statement material to a false or fraudulent claim; (c)
> conspires to commit a violation of paragraph
> (a), (b) [or] (g); [or]  . . . (g) knowingly makes, uses, or causes to
> be made or used, a false record or statement material to an
> obligation to pay or transmit money or property to the state or a
> local government shall be liable to the state or a local government,
> as applicable, for a civil penalty of not less than six thousand
> dollars and not more than twelve thousand dollars, plus three times
> the amount of all damages, including consequential damages,
> which the state or local government sustains because of the act of
> that person.

(N.Y. State Finance Law § 189(1)(a), (b), (c) & (g), as amended August 13, 2010).

### FIRST CAUSE OF ACTION
### (31 U.S.C.  §§ 3729(a)(1), (2) & (3))
### (All Defendants)

41.    Relator incorporates by reference paragraphs 1 through 40 of this

Complaint, as if fully set forth herein.

42.    Defendants have engaged in a continuous practice of:  (a)

knowingly presenting, and causing to be presented, to an officer and employee of the

United States Government, false and fraudulent claims for payment and approval; (b)

knowingly making, using, and causing to be made and used, false records and statements

to get false and fraudulent claims paid and approved by the United States Government;

and (c) conspiring to defraud the United States Government by getting false and

fraudulent claims allowed or paid, in that Defendants made claims to the U.S.

Department of Education and the New York State Higher Education Assistance

Corporation to obtain government funded and/or subsidized student financial assistance

grants and loans.  All such conduct was and is in violation of 31 U.S.C. §§ 3729(a)(1), (2) and (3).

43.    As a result of this false and fraudulent conduct the United States Government was damaged in an amount to be determined a trial but that is no less than $1 million.

### SECOND CAUSE OF ACTION
### (N.Y. State Finance Law §§ 189(1)(a), (b) & (c))
### (All Defendants)

44.    Relator incorporates by reference paragraphs 1 through 43 of this Complaint, as if fully set forth herein.

45.    Defendants have engaged in a continuous practice of:  (a) knowingly presenting, and causing to be presented, to an officer and employee of New York State, false and fraudulent claims for payment and approval; (b) knowingly making, using, and causing to be made and used, false records and statements to get false and fraudulent claims paid and approved by New York State; and (c) conspiring to defraud New York State by getting false and fraudulent claims allowed or paid, in that Defendants made claims to the New York State Higher Education Assistance Corporation to obtain government funded and/or subsidized student financial assistance grants and loans.  All such conduct was and is in violation of New York State Finance Law §§ 189(1)(a), (b) & (c).

46.    As a result of this false and fraudulent conduct New York State was damaged in an amount to be determined at trial but that is no less than $1 million.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of 31 U.S.C. § 3730(h))
### (New York Institute of Technology)

47.     Plaintiff repeats and realleges the facts alleged in paragraphs 1 through 46 as if fully set forth herein.

48.     The Federal False Claims Act, as amended in 2009, provides in relevant part as follows:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent on behalf of the employee, contractor, or agent or associated others in furtherance of other efforts to stop 1 or more violations of this subchapter.

31 U.S.C.  § 3730(h)(1).   The remedies under this provision include, but are not limited to reinstatement, two times the amount of back pay plus interest, special damages, litigation costs, and reasonable attorney's fees.

49.     Defendant NYIT suspended and then terminated Relator from employment by defendant via letters dated on or about May 18, 2007, July 30, 2007 and October 24, 2008.  NYIT's actions relating to such suspensions and terminations, including but not limited to its actions subsequent to such suspensions and terminations, were in retaliation for Relator's complaints including those to the NYIT administration, concerning the deficiencies in the management and oversight of the Ellis (Cardean/UNext) and other international and domestic School of Management programs and the attendant misrepresentations that had been made to agents and representatives of the federal and state governments regarding those programs.

50.     Relator's actions were lawful acts in furtherance of an action to be filed under the False Claims Act and to prevent the submission of false claims to the federal government.

51.     As a result of defendant's retaliatory actions, Relator has been damaged and continues to be damaged.

### FOURTH CAUSE OF ACTION
**(Retaliation in Violation of**
**New York State Finance Law § 191(1))**
**(New York Institute of Technology)**

52.     Plaintiff repeats and realleges the facts alleged in paragraphs 1 through 51 as if fully set forth herein.

53.     The New York State False Claims Act, as amended in 2010, provides in relevant part as follows:

> Any current or former employee, contractor, or agent of any private or public employer who is discharged, demoted, suspended, threatened, harassed or in any other manner discriminated against in the terms and conditions of employment, or otherwise harmed or penalized by an employer, or a prospective employer, because of lawful acts done by the employee, contractor, agent, or associated others in furtherance of an action brought under this article or other efforts to stop one or more violations of this article, shall be entitled to all relief necessary to make the employee, contractor or agent whole.

N.Y. Finance Law § 191(1).  The remedies under this provision include, but are not limited to reinstatement, two times the amount of back pay plus interest, special damages, litigation costs, and reasonable attorney's fees.

54.     Relator's actions as set forth in paragraph 49 above, were lawful acts in furtherance of an action to be filed under the New York False Claims Act and to prevent the submission of false claims to the New York State government.

55.    As a result of defendant's retaliatory actions set forth above,

Relator has been damaged and continues to be damaged.

## PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of himself individually, and acting on

behalf, and in the name, of the United States and of New York State, respectively,

demands and prays that judgment be entered against the Defendants as follows:

1.    That the Defendants shall be ordered to cease and desist from

violating the False Claims Act, 31 U.S.C. §§ 3729-3732 and the New York False Claims

Act, N.Y. State Finance Law §§ 189-194.

2.    On the First Cause of Action under the False Claims Act, judgment

shall be entered against Defendants in the amount of three times the amount of damages

the United States has sustained because of Defendants' actions, plus a civil penalty of

$11,000.00 for each act in violation of the False Claims Act, as provided by § 3729(a),

with interest.  Single damages representing the federal student financial assistance

illegally paid to Defendants are estimated to be no less than $1 million.   Treble damages

and penalties would be in addition to the foregoing single damages.

3.    That Relator shall be awarded the maximum amount available

under § 3730(d) of the False Claims Act for bringing this action, namely, 25 percent of

the proceeds of the action or settlement of the claim if the United States intervenes in the

matter (or pursues its claim through any alternate remedy available to the United States,

§ 3730(c)(5)), or, alternatively, 30 percent of the proceeds of the action or settlement of

the claim, if the United States declines to intervene.

4.     On the Second Cause of Action under the New York False Claims Act, judgment shall be entered against Defendants in the amount of three times the amount of damages New York State has sustained because of Defendants' actions, plus a civil penalty of $12,000.00 for each act in violation of the New York False Claims Act, as provided by N.Y. State Finance Law § 189(1)(i) & (ii), with interest.  Single damages for the student financial assistance payments that Defendants illegally obtained from New York State are estimated to be no less than $1 million. Treble damages and penalties would be in addition to the foregoing single damages.

5.     That Relator shall be awarded the maximum amount available under §190(6) of the New York False Claims Act for bringing this action, namely, 25 percent of the proceeds of the action or settlement of the claim if New York State intervenes in the matter (or pursues its claim through any alternate remedy available to New York State, N.Y. State Finance Law § 190(7)) or, alternatively, 30 percent of the proceeds of the action or settlement of the claim, if New York State declines to intervene.

6.     That Relator shall be awarded all reasonable expenses that were necessarily incurred in the prosecution of this action, plus all reasonable attorneys' fees and costs, as provided by 31 U.S.C. § 3730(d) and/or N.Y. State Finance Law § 189(3) and § 190(7).

7.     On the Third and Fourth Causes of Action, an injunction restraining NYIT's illegal discrimination, reinstatement of full fringe benefits and seniority rights, two times back pay, plus interest, compensation of special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

8.      And, that such other relief shall be granted in the favor of the

United States, New York State and the Relator as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator

hereby demands trial by jury.

Dated:          New York, New York
                September 16, 2011

Respectfully submitted,

MENZ BONNER & KOMAR LLP

By:     _____
            David A. Koenigsberg, Esq.
        444 Madison Avenue, 39th Floor
        New York, New York 10022
        Tel.:  (212) 223-2100
        Fax.:  (212) 223-2185
        Email:  dkoenigsberg@mbklawyers.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA, *ex rel.*
GURUMURTHY KALYANARAM and
STATE OF NEW YORK, *ex rel.* GURUMURTHY
KALYANARAM,

                      Plaintiffs,

                  -- v --

NEW YORK INSTITUTE OF TECHNOLOGY, ELLIS
COLLEGE OF NEW YORK INSTITUTE OF
TECHNOLOGY, CARDEAN LEARNING GROUP LLC,
UNEXT, INC. and UNEXT LLC,

                      Defendants,

------------------------------------------------------------------X

**FILED
UNDER SEAL
Pursuant to
31 U.S.C. § 3730(b)
and N.Y. State
Finance Law
§ 190(2)(b)**

07 Civ. 9307 (JFK)

## CERTIFICATE OF SERVICE

Stefanie A. Singer hereby certifies, pursuant to 28 U.S.C. 1746, as follows:

I served copies of Relator's First Amended Complaint as follows:

1.      On September 16, 2011, I served the foregoing document upon the

following at the addresses listed below by First Class Certified United States Mail, Return

Receipt Requested:

The Honorable Eric Holder
United States Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530-0001

Civil Clerk, Office of the U.S. Attorney
Southern District of New York
Attention:  Allison Penn, Esq.
86 Chambers Street, 3rd Floor
New York, NY  10007

Managing Clerk's Office
Office of the New York Attorney General
Attention: Taxpayer Protection Bureau
120 Broadway, 24th Floor
New York, New York 10271

I certify under penalty of perjury that the foregoing is true and correct.

Executed on:   September 19, 2011
               New York, New York

Stefanie A. Singer