**MANDATE**

12-4036-cv
Kalyanaram v. New York Institute of Technology

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand thirteen.

PRESENT:
    GERARD E. LYNCH,
    DENNY CHIN,
    CHRISTOPHER F. DRONEY,
               *Circuit Judges.*

_____

GURUMURTHY KALYANARAM,

        *Plaintiff-Appellant*,

    v.                                                                 12-4036-cv

NEW YORK INSTITUTE OF TECHNOLOGY,

        *Defendant-Appellee*.[*]

_____

FOR APPELLANT:    DAVID T. AZRIN, Gallet, Dreyer, & Berkey, New York, NY.

FOR APPELLEE:    JESSICA L. ELLSWORTH (Mary Helen Wimberly, *on the brief*), Hogan Lovells US, LLP, Washington, DC.

_____

[*] At oral argument, the Court granted defendant-appellee's motion to unseal the appeal. The Clerk of Court is respectfully directed to unseal the file and to amend the official caption in this case to conform with the caption above.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 05, 2014

MANDATE ISSUED ON 03/05/2014

Appeal from a judgment of the United States District Court for the Southern District of New York (John F. Keenan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the amended judgment of the district court is **AFFIRMED**.

Gurumurthy Kalyanaram appeals from the district court's grant of summary judgment dismissing his claim of retaliatory termination as barred by the doctrine of collateral estoppel. Over the course of about fifteen months, Kalyanaram's employer, New York Institute of Technology ("NYIT"), accused him of a series of escalating instances of professional misconduct. Kalyanaram contested these allegations in two ways: He disputed the charges in an arbitration proceeding, as was his right under the collective bargaining agreement governing his employment, and he included an allegation of retaliatory suspension and termination in a qui tam action against NYIT that he filed in federal court midway through his troubles with the school.[1] The arbitration ended in a finding that NYIT fired Kalyanaram for just cause, which was upheld in the state courts. When the district court adjudicating the qui tam action learned of the arbitrator's decision, it ordered briefing on whether Kalyanaram's claim of retaliation was precluded by the doctrine of collateral estoppel and, ultimately, dismissed his case. We assume familiarity with the factual and procedural history of the case and the issues on appeal, and we recount only what is necessary to explain our disposition.

Under the doctrine of collateral estoppel, where "the issue in question was actually and necessarily decided in a prior proceeding," and "the party against whom the doctrine is asserted

---

[1] Kalyanaram's suit claimed that NYIT submitted fraudulent information to federal and state agencies so that the school's students would be eligible for subsidized student loans. His claims were brought under the federal False Claims Act and its New York state equivalent. See 31 U.S.C. § 3729, N.Y. State Fin. Law § 189.

had a full and fair opportunity to litigate the issue in the first proceeding," a subsequent court is barred from revisiting the issue. Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995). "To obtain summary judgment on collateral estoppel grounds, the defendants must make a showing so strong that no fair-minded jury could fail to find that the arbitrator necessarily denied the claim for the reason they assert." BBS Norwalk One, Inc. v. Raccolta, Inc., 117 F.3d 674, 677 (2d Cir. 1997). Upon review of the record, and for the reasons set forth below, we hold that Kalyanaram has failed to raise a genuine issue of material fact as to whether the arbitrator failed to reach his retaliation claim.

A prior judgment that an employer had reasonable grounds for firing an employee does not always preclude a separate action challenging that decision as discriminatory. See Vargas v. City of New York, 377 F.3d 200, 206 (2d Cir. 2004). As we have explained, "'[a] finding that [a] decision to terminate was supported by substantial evidence — essentially a finding that it was rational — does not lead inexorably to the conclusion that [the impermissible criterion] was not a motivating factor'" in determining the penalty. Id. at 207 (quoting Latino Officers Ass'n v. City of New York, 253 F. Supp. 2d 771, 785 (S.D.N.Y. 2003)). That is so because an employer may have an objectively sound ground on which to take action against an employee, but may have still subjectively chosen that sanction for an impermissible reason, such as an employee's race (as in Vargas), or his whistleblower activities (as alleged here). Thus, under Vargas, collateral estoppel turns not on whether a prior adjudication found that an employer had a reasonable basis to discipline an employee, but on whether an employee raised a claim that behind the veil of reasonableness lay an impermissible motivating factor.

Here, Kalyanaram maintained through two years of arbitration proceedings that NYIT fired him in retaliation for his complaints about the school's deceptive and fraudulent

3

accreditation practices, and the arbitrator rejected his claim.  According to Kalyanaram, he made these complaints at three different times: in e-mails to the administration sent as early as 2005, in his qui tam suit in 2007, and in e-mails sent under pseudonyms in the summer of 2008.  But Kalyanaram informed the arbitrator only about one set of complaints, the original protests he made between 2005 and 2007; Kalyanaram never disclosed the existence of his qui tam suit, an action kept under seal until 2012, and he denied sending any e-mails under an assumed name.  Thus, Kalyanaram's initial internal complaints were the only alleged whistleblower activities before the arbitrator when he reviewed NYIT's disciplinary decisions.  The arbitrator reviewed this evidence, and, in two separate opinions "actually and necessarily decided," Colon, 58 F.3d at 869, that NYIT had not disciplined Kalyanaram in retaliation for his critiques of the school's fraudulent practices.

      The arbitrator first rejected Kalyanaram's retaliation claim in August of 2008.  At that point, NYIT sought to terminate Kalyanaram because a group of students had complained about his conduct in the classroom.  The students alleged that Kalyanaram had sexually harassed members of a class by asking intrusive questions about their dating lives, and had shirked his duties as a teacher by, for example, consistently arriving half an hour late.  The arbitrator found the students' critiques to have merit and held that the complaints gave NYIT a reasonable basis to suspend Kalyanaram for a semester.  The arbitrator acknowledged that "[a] primary element of [Kalyanaram's] defense [against the disciplinary action] is that the penalty imposed by NYIT was improperly exaggerated in retaliation for allegations [he made] against the NYIT administration," J. App'x at 149, but found that the school had not used the students' dissatisfaction as an excuse to discipline Kalyanaram for his dissidence: "The evidence suggests that the grievant was the harbinger of unwelcome news on more than one occasion, but there is

4

no reliable evidence that the NYIT administration concocted or materially influenced the nature and level of complaints triggered by the grievant's conduct in his . . . classroom." Id. at 150.

Kalyanram points out that, later in that decision, the arbitrator appears to have softened his conclusion, noting that "the validity of the grievant's accusations regarding retaliation *need not be determined with certainty* to reach the conclusion mandated by the evidentiary record that the grievant committed substantial errors." Id. At 154 (Emphasis added.) But the arbitrator clarified any ambiguity about his view of Kalyanaram's retaliation claim in a second opinion handed down in August of 2009. There the arbitrator concluded that NYIT had grounds to fire Kalyanaram because he authored a string of pseudonymous e-mails about the school. Kalyanaram again raised retaliation as a defense, still relying in part on his early complaints about the school as evidence. The arbitrator again dismissed the argument, this time without reservation: His ruling acknowledged that "[a]n employee who acts as an identified whistleblower and provides accurate, if damaging, information to a regulatory agency should be immune from retaliation." Id. at 118. But Kalyanaram could not complain about NYIT's alleged retaliation for his most recent e-mails because, as the arbitrator pointed out, "employees are not free to create fictitious characters in order anonymously to convey unsubstantiated and potentially scurrilous innuendos or accusations to the detriment of their employer." Id. And any retaliation claim that harkened back to past e-mail complaints, the same argument raised a year earlier, was also unavailing; as the arbitrator put it, "[t]here [was] no basis in the record to reverse or rescind the suspension imposed on the grievant for his actions [in the classroom]," a decision that included a finding that the school had not used the students' complaints as a pretext to punish Kalyanaram for his critiques. Id. at 128. Thus, in two opinions, the arbitrator twice

5

concluded that NYIT disciplined Kalyanaram for unprofessional behavior, not for his protests about NYIT's lax academic standards.

The arbitrator's judgments were later confirmed by a New York state trial court and a state appellate court. In those proceedings, Kalyanaram again raised his retaliation claim and both courts rejected the argument. The New York Supreme Court held that "[n]o public policy concerns [were] implicated by the [arbitration award because] [p]etitioner was not engaged in protected academic expression or efforts before an appropriate body to expose wrong doing [sic]." Id. at 206-07. The Appellate Division First Department agreed. The arbitrator made reasonable factual findings, and on those facts, "the fraudulent conduct engaged in by petitioner did not fall within the parameters of academic freedom or the [anti-retaliation] statutes."[2] Kalyanaram v. New York Institute of Technology, 913 N.Y.S.2d 159, 161 (N.Y. App. Div. 2010).

To the extent Kalyanaram complains that he never had a "full and fair opportunity" to present a complete picture of his whistleblower activities, Colon, 58 F.3d at 869, he has only himself to blame. Kalyanaram chose not to tell the arbitrator that he had filed a qui tam action accusing NYIT of fraudulent business practices. Contrary to Kalyanaram's contention, his silence was not compelled by any court order. The district court had issued an order in 2007, soon after the filing of the qui tam suit, partially unsealing the case so that Kalyanaram could "respon[d] to any questions" that he was "asked at any arbitration" that bore on the claims in his

---

[2] Even if the arbitration award had not yet been confirmed by state courts, it could still have preclusive effect. See Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 267-68 (2d Cir. 1997) (holding that "res judicata and collateral estoppel apply to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award" (citations omitted)).

6

federal case. J. App'x at 402. The district court's order also expressly authorized Kalyanaram to provide an "*in camera* and *ex parte*" copy of the order to "the person or persons presiding over any arbitration or state court proceeding in which [Kalyanaram's] response is challenged." Id. at 403. But Kalyanaram never presented the arbitrator with a copy of the order.

He also chose to deny his authorship of the pseudonymous e-mails, rather than to argue, as he does now, that they were part of his efforts to amass evidence for his qui tam action. Indeed, presented with the opportunity to give a full account of his activities, Kalyanaram repeatedly lied under oath. When NYIT offered the e-mails into evidence, Kalyanaram denied sending them. The arbitrator then adjourned the proceedings for a month. When Kalyanaram returned to the stand weeks later, he again denied authorship. Rather than acknowledging his actions, he presented an elaborate, fabricated defense, claiming that NYIT's IT staff had hijacked Kalyanaram's IP address and written the e-mails so it could use the inflammatory notes as ammunition to fire him. He clung to this strategy through almost a year of post-hearing briefing, and two years of unsuccessful appeals through the state court system. Thus, to the extent the arbitrator evaluated a slim record, it was a record starved by Kalyanaram, not by any inadequacy of the arbitration process.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit